**UNITED STATES et al. v. UNITED DRILL & TOOL CORP.**

**UNITED DRILL & TOOL CORP. v. UNITED STATES et al.**

Nos. 10154, 10155.

United States Court of Appeals District of Columbia Circuit.

Argued April 10, 1950.

Decided July 24, 1950.

Mr. Julian R. Wilheim, Attorney, Department of Justice, with whom Assistant Attorney General H. G. Morison, Mr. George Morris Fay, United States Attorney, and Mr. L. Clark Ewing, Assistant United States Attorney, were on the brief, for the United States. Mr. Newell A. Clapp, Attorney, Department of Justice, Washington, D. C., also entered an appearance for the United States.

Mr. William M. Aiken, Washington, D. C., with whom Mr. Herbert Silvers, Washington, D. C., was on the brief, for United Drill and Tool Corporation.

Before EDGERTON, PRETTYMAN and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are cross-appeals from a judgment of the United States District Court for the District of Columbia allowing interest at 4 per cent per annum on an obligaton due the United States.

The Secretary of War, pursuant to the Renegotiation Act of 1942,[1] determined that United Drill and Tool Corporation had realized excessive profits from war contracts with the United States and on May 5, 1945, entered a unilateral determination of such profits in the net amount of $646,-845.44. The sole controversy in the case concerns interest on that obligation.

The Renegotiation Act did not specifically provide for interest. United Drill and Tool Corporation says that since Congress made no provision for interest none is due. But a statutory obligation in the nature of a debt bears interest even though the statute creating the obligation fails to provide for it.

The rule as to the allowance of interest can be found as a thread which runs through many cases in the Supreme Court. In the footnote below[2] we list the cases in that Court which have been cited by the Court itself upon the subject. The controlling doctrine is clearly discernible when those cases are examined. Statutory obligations may bear interest even though the statute makes no provision for it. Interest on such obligations is or is not payable depending upon the purpose of the statutory enactment and upon principles of equity. If the obligation is in the nature of a debt it is deemed interest-bearing, because the statutory purpose was to create a debtor-creditor relationship and in equity interest is allowed as a means of compensating a creditor for loss of use of his money. The basic rule was succinctly stated in Young v. Godbe,[3] where the Court said:

"* * * If a debt ought to be paid at a particular time, and is not, owing to the default of the debtor, the creditor is entitled to interest from that time by way of compensation for the delay in payment. And if the account be stated, as the evidence went to show was the case here, interest begins to run at once. * * *

"It is said there is no law in the territory of Utah prescribing a rate of interest in transactions like the one in controversy in this suit, and that, therefore, no interest can be recovered. But this result does not follow. If there is no statute on the subject, interest will be allowed by way of damages for unreasonably withholding payment of an overdue account. * * *"

Thus, in Royal Indemnity Co. v. United States,[4] the Court allowed interest upon the amount due to the United States by a surety company upon a bond given for the payment of a tax plus interest thereon. The Court there held that the surety's liability was for breach of a contractual obligation to pay the tax and the interest thereon and that interest was an appropriate measure of the damage for delay in that payment. And again, in Billings v. United States,[5]

1. 56 Stat. 245, 982, as amended, 50 U.S.C.A.Appendix § 1191.

2. United States v. State of North Carolina, 1890, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336; Funkhouser v. J. B. Preston Co., 1933, 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243; Brooklyn Bank v. O'Neil, 1945, 324 U.S. 697, 65 S.Ct. 895, 89 L. Ed. 1296; Pierce v. United States, 1921, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697; Young v. Godbe, 1873, 15 Wall. 562, 82 U.S. 562, 21 L.Ed. 250; Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L. Ed. 1361; Board of Comm'rs of Jackson County v. United States, 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Billings v. United States, 1914, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596; Rodgers v. United States, 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3; United States v. Sanborn, 1890, 135 U.S. 271, 10 S.Ct. 812, 34 L.Ed. 112; McGrath v. Manufacturers Trust Co., 1949, 338 U.S. 241, 70 S.Ct. 4, 94 L.Ed. —; United States v. United States Fidelity & Guaranty Co., 1915, 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696.

3. 1873, 82 U.S. 562, 565, 15 Wall. 562, 21 L.Ed. 250, 251.

4. 1941, 313 U.S. 289, 61 S.Ct. 995, 85 L. Ed. 1361.

5. 1914, 232 U.S. 261, 34 S.Ct. 421, 58 L. Ed. 596.

the Court allowed interest upon an excise tax, holding that such a tax is a personal debt.

 On the other hand, if the obligation is not in the nature of an obligation to pay money, as, for example, if a statute imposes a penalty, interest is not allowed, because to do so would not be in accord with the equitable nature of interest; there is no debtor-creditor relationship, and hence interest, if allowed, would serve only to increase the penalty and not to compensate for loss of use of money owing a creditor. Thus, in Rodgers v. United States,[6] the Court declined to allow interest on money penalties to which farmers marketing cotton in excess of quotas were subject under the Agricultural Adjustment Act, 7 U.S. C.A. § 601 et seq. And, in Brooklyn Saving Bank v. O'Neil,[7] it declined to allow interest upon amounts recoverable by employees under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., for unpaid minimum wages plus liquidated damages. And again, in McGrath v. Manufacturers Trust Co.,[8] the Court declined to allow interest upon the recovery of a fund by the Alien Property Custodian under the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 1 et seq., since the purport of the order was to turn over physical possession of the fund.

The opinion in United States v. United States Fidelity & Guaranty Co.[9] reflects the controlling considerations upon the point. Advance payments had been made by the Government on a contract for the construction of buildings. The contractor defaulted. The Court held the advance payments to be recoverable, with interest thereon from the date of the contractor's default. Recovery against the surety upon a bond given to insure performance was limited to the penal sum of the bond. The Government claimed interest upon that sum from the time of the principal's default. The Court held the surety not liable for interest from that time but liable from the time of the surety's default after notice. The criterion was clearly that the surety was liable for the damage caused by its withholding payment upon the obligation of a debt.

Comment should be made upon Board of Comm'rs of Jackson County v. United States,[10] frequently cited upon this subject. The issue of interest vel non was there complicated by two considerations, (1) that the controversy was intergovernmental, between the United States and Jackson County, Kansas, and (2) that the levy by the County of the taxes sought to be recovered was consequent to official action by the United States, making the property subject to such taxation, and a long unexplained delay on the part of the United States in rescinding such action. The opinion must be read in that context. A similar question of intergovernmental liability was involved in United States v. North Carolina,[11] and a similar question of delay was in United States v. Sanborn.[12]

 Sums due the United States upon renegotiation of contracts are clearly debts. The contractor owes the United States because the United States has overpaid him. Interest therefore runs from the date upon which the contractor fails to make repayment, after proper notice.

We are in accord with the Ninth Circuit Court of Appeals[13] and with what appears to be the general consensus of opinion of District Courts. Interest was allowed in the renegotiation cases reported together as Lichter v. United States,[14] although the

6. 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3.

7. 1945, 324 U.S. 697, 65 S.Ct. 895, 89 L. Ed. 1296.

8. 1949, 338 U.S. 241, 70 S.Ct. 4, 94 L. Ed. ——.

9. 1915, 236 U.S. 512, 35 S.Ct. 298, 59 L. Ed. 696.

10. 1939, 308 U.S. 343, 60 S.Ct. 285, 84 L. Ed. 313.

11. 1890, 136 U.S. 211, 10 S.Ct. 920, 34 L. Ed. 336.

12. 1890, 135 U.S. 271, 10 S.Ct. 812, 34 L. Ed. 112.

13. Sampson Motors v. United States, 9 Cir., 1948, 168 F.2d 878.

point was not discussed in the Supreme Court's opinion.

 The next question concerns the rate of interest to be allowed. The District Court fixed 4 per cent. The Government argues that 6 per cent should be allowed because that is the prevailing interest rate in the District of Columbia, where this suit was brought. Local statutes may be persuasive in determining the rate of interest on obligations involving the United States, but they are not controlling.[15] In the absence of applicable statute, a federal court may fix the rate which will compensate the Government for loss of immediate use of money due. Within its sound discretion the court may or may not follow the local statute; but we cannot say that the rate fixed is erroneous, unless it is shown that it does not adequately compensate the creditor.

 The Government also contends that it is entitled to exact a relatively high rate of interest as a coercive measure to force speedy payment of the excess profits determined under the Act. But this argument overlooks the nature of interest which is compensatory rather than punitive or coercive. We cannot change interest from a means of compensation to a coercive or punitive measure, as the Government urges us to do, unless the statute so provides.[16]

The judgment of the District Court is affirmed.

14. 1948, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694.

15. Royal Indemnity Co. v. United States, supra.

16. Billings v. United States, supra; United States v. Childs, 1924, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299; McGrath v. Manufacturers Tr. Co., supra.